IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KENT THROWER,                    )
                                 )
                Plaintiff,       )
                                 )
        vs.                      )     Civil Action No. 04-577
                                 )
THE HOME DEPOT, INC.,            )
                                 )
                Defendant.       )


<u>MEMORANDUM OPINION</u>

BLOCH, District J.


        Presently before this Court is Defendant's Motion For Summary Judgment on Plaintiff's claims.  For the reasons set forth herein, this Court will grant Defendant's motion.

### I.  **Procedural History**

        Beginning in May 1991, at the age of 39, Plaintiff, Kent Thrower ("Thrower"), was employed continuously by Defendant, The Home Depot, U.S.A. Inc. ("the Company" or Home Depot"), until he was terminated effective April 12, 2002, at the age of 50.  <u>See</u> Joint Statement of Material Facts Not in Dispute (hereinafter "SMF"), ¶¶ 1, 57.  The basis for his firing is at issue in this case.  Thrower alleges in his complaint that Regional Vice President Jim Kane ("Kane") and the then Pittsburgh District Manager Kari Wallace ("Wallace") discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. § 621 <u>et seq.</u>,

1

and the Pennsylvania Human Relations Act ("PHRA"). <u>See</u> Complaint ¶¶ 3, 12. Home Depot has filed a motion for summary judgment, which the Court addresses in this opinion. This Court exercises federal question jurisdiction over Thrower's claim under the ADEA pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his claim under PHRA pursuant to 28 U.S.C. § 1367.

## I.  **<u>Background</u>**[1]

A.  *Thrower's General Employment History at Home Depot*. Thrower was initially hired by Home Depot in 1991 to fill a non-managerial position in the Company's Baltimore district. He was promoted to Assistant Store Manager in 1994 and Store Manager in 1996 within that district before requesting a transfer to Pittsburgh for personal reasons in 1997. SMF ¶¶ 1-2. With no Store Manager positions available at that time in the Pittsburgh district, Thrower was placed in an open Assistant Store Manager position. However, effective January 31, 2000, when he was 48 years of age, Thrower was promoted to Store Manager of the newly-opened Cranberry Township

---

[1]  Pursuant to the Court's standing Order regarding summary judgment motions, the parties are required to "file with the court a joint statement of material facts not in dispute ... [which] shall contain numbered paragraphs setting forth all material facts not in dispute which are to support a Summary Judgment Motion and which are necessary for its resolution." Order Regarding Summary Judgment Motions and Joint Statement of Material Facts Not in Dispute, date August 5, 2004. The joint submission provides each party with the opportunity to designate material as "disputed" and as "material" to the resolution of any Summary Judgment Motion. In accordance with the standing Order, this Court will only consider those facts contained in the joint statement.

Store.  SMF ¶¶ 3, 5.  This promotion had been approved by Kane and Rusty Spooner ("Spooner"), then District Manager for the Pittsburgh District, both of whom were over 40 years of age at the time of the decision.  SMF ¶ 4.

B.  *Relevant Home Depot Policies and Practices.*  Home Depot's Code of Conduct prohibits the falsification of reports, and employees of the Company are informed that such conduct may lead to termination.  SMF ¶ 8.  Furthermore, Home Depot's Ethics Code, of which Thrower was aware, states that "[t]he Company's books and records must accurately reflect all Company funds, assets and transactions.  Entries into Company records must be made promptly without false or misleading information.  The integrity of our accounting practices requires that supporting documents are accurate and complete."  SMF ¶ 9-10.  A violation of the Ethics Code is grounds for termination.  SMF ¶ 11.

C.  *Thrower's Termination.*  Home Depot has established procedures relating to the manner in which employees are to record any deviation from the retail value of a product for which the Company can ascertain the cause of a decreased value.  Such recording of a product's value is referred to as a "markdown."  SMF ¶ 12.  For example, sale prices, price adjustments to meet a competitor's price, damaged goods, customer satisfaction refunds, and products ultimately disposed of are considered markdowns.  SMF ¶ 13.  In accordance with the Company's Standard Operating Procedure

3

("SOP"), a Computer Room Associate must enter the markdowns into the computer system daily to "keep the perpetual inventory correct." SMF ¶ 15.

Store Managers receive specific training about how to manage markdowns, but they are not trained to withhold or delete markdowns as a management tool. SMF ¶ 19-20. In fact, it is Home Depot's policy and practice to accurately enter markdowns into the computer system as promptly as possible. SMF ¶ 23. While the Company's policy and practice for markdowns permits a Store Manager to make corrections to information previously entered when it is later found that the information is incorrect or not accurate, he should inform either the District Manager and/or Loss Prevention to ensure accurate and up-to-date record keeping. SMF ¶ 24-25. Moreover, a Store Manager should not alter previously entered markdown information except to correct an error. SMF ¶ 26.

On April 4, 2002, Janice Feathers ("Feathers"), Computer Room Associate in the Cranberry Township Store, reported to the Store's Human Resource Manager, Karen Karda ("Karda"), that Thrower had asked her to delete markdowns that she had previously entered on April 3, 2002, so that the Store's markdown numbers would appear to be closer to the goal set by Kane for all Pittsburgh District Store Managers. SMF ¶ 28, 42. Karda forwarded Feathers' complaint to Ruth Honacki ("Honacki"), then District Human Resources Manager responsible for the Cranberry Township Store, who contacted Tony

4

Kuniak ("Kuniak"), then District Loss Prevention Manager. SMF ¶ 29-30. In response to Feathers' allegations, Kuniak commenced an investigation, which included a review of documents and conversations with Karda and Feathers. Although Kane was informed by Honacki and Kuniak that an associate made a complaint about Thrower and that an investigation had been initiated, Kane did not play a role in either Feathers' report or the subsequent investigation. SMF ¶ 32.

Kuniak's investigation revealed that Thrower had consistently asked Feathers since September 2000 to delete markdowns previously entered into the system in order to be under or close to the weekly markdown goals. SMF ¶ 33. Each of the deleted markdowns was re-entered into the system at a later date when it would not cause Thrower to miss his goals. SMF ¶¶ 34, 37. Thrower admitted that he had asked Feathers to delete and later re-enter accurate, properly entered markdowns. SMF ¶ 37-38.

Following the completion of his investigation, Kuniak told Honacki that he believed that the facts demonstrated that Thrower's actions with respect to markdowns misrepresented actual inventory on hand and constituted altering a company report. Termination, according to Kuniak, was appropriate given Thrower's conduct. SMF ¶ 49. Honacki, who concurred with Kuniak's conclusions and recommendation, then reported the results of the investigation to Home Depot's Employment Practices Manager, Chris Bizarro, who was

5

responsible for ensuring that any decision to terminate or suspend a managerial associate was consistent with the Company's practices and commitment to fair treatment.  SMF ¶ 50, 55.  After reviewing the investigation report, he found that, consistent with Kuniak's recommendation, termination was warranted.  SMF ¶ 51.  Honacki then conveyed Kuniak's and Bizarro's recommendations to her immediate supervisor, then Vice President of Human Resources Herbert Miller ("Miller"), who reviewed the information and concurred in the recommendation to terminate Thrower's employment.  SMF ¶ 52.  Subsequently, Kane was informed of the results of the investigation and recommendations by Loss Prevention and Human Resources, and based upon the facts, he agreed.  SMF ¶ 53.  Wallace also agreed that Thrower's conduct was in violation of the Company's policy against altering company documents and his employment should be terminated as a result. SMF ¶ 54.

Kane and Wallace met with Thrower to inform him of the decision to terminate his employment with Home Depot effective April 12, 2002.  SMF ¶ 58.  Subsequently, the Company hired John Sieg ("Sieg") as Store Manager in Cranberry effective May 27, 2002.  At the time of his hiring, Sieg was 31 years of age.  SMF ¶ 60.

D.  *Thrower's Claims of Disparate Treatment and Discriminatory Intent*.  Although six Home Depot employees at various levels of the company hierarchy were in agreement with respect to Thrower's termination, he alleges that only two of those employees,

Kane and Wallace, discriminated against him based upon his age.  SMF ¶ 61.  With respect to Kane, Thrower has alleged that, approximately one year before Kane approved Thrower's promotion to Store Manager of the Cranberry Township Store and on several occasions thereafter, Kane made several comments to him that he needed to be "more vocal, to be louder, to be more on fire ... being a good citizen isn't enough ... jump on tables, be more energetic, more full of life." SMF ¶ 77.  He also testified that Kane made comments that Thrower was "more reserved, slower" than other Store Managers.  SMF ¶ 78. With respect to Wallace, Thrower testified that Wallace told him that employees "tend to look like the store managers over a period of time [a]nd that the employees in the Cranberry [Township] store were beginning to look like [Thrower].  They were slower.  They were older.  That other stores had more life and energy."  SMF ¶ 75. Admittedly, Thrower understood this comment to be analogous to a statement that "husbands and wives look alike over a period of time."  SMF ¶ 76.  Additionally, Thrower stated that he was, in fact, "more calm ... more reserved ... older" than other Store Managers.  SMF ¶ 79.

Prior to Thrower's discharge, Home Depot terminated other Store Managers for falsifying company documents.  To this end, Christos Tambakis ("Tambakis"), who was 39 years of age at the time of his discharge, was terminated for falsely recording merchandise as having been marked down and using the products as a substitute

for cash to cover the cost of a damaged Home Depot vehicle.   SMF ¶ 63.   Larry Klein ("Klein"), who was 31 years of age at the time of his discharge, was also terminated when an investigation revealed that on several occasions he had circumvented company procedures for the purpose of manipulating markdowns to generate petty cash for miscellaneous expenses in the Store.   SMF ¶ 64.   Kane issued and signed off on Klein's Termination Notice.   SMF ¶ 65.

While two Store Managers were terminated for falsifying company documents in conjunction with markdowns, two others working in the Pittsburgh District were not.   During their tenure as Store Managers, Barry Correll ("Correll") and Doug Dautovich ("Dautovich") withheld markdowns and entered the data incrementally or withheld markdowns entirely.   SMF ¶ 66.   The men who replaced Correll and Dautovich as Store Managers reported this conduct to the District Manager at the time that it was discovered. Dautovich's conduct was reported to Spooner, and Correll's conduct was reported to Wallace, who succeeded Spooner as District Manager.   SMF ¶ 67.   No report of Dautovich and Correll's conduct was made to Human Resources, Loss Prevention, or Jim Kane.   SMF ¶ 67.

Thrower testified at his deposition that he had overheard Spooner telling Dautovich to spread several thousand dollars of markdowns for dead plants over several months, and Dautovich has confirmed that Spooner advised him to do so.   SMF ¶ 74.   To this end, although Dautovich was still employed by Home Depot within the

Pittsburgh District when his conduct relating to markdowns was reported, Spooner never took any disciplinary action against him. Notably, Dautovich was over 40 years of age when this conduct was reported to Spooner. SMF ¶ 74. Subsequently, the Company terminated Dautovich's employment for other reasons. SMF ¶ 71.

Similarly, Wallace did not launch an investigation of Correll or take any further action against him. However, at the time Correll's misconduct was reported to Wallace, Correll already had self-demoted out of the Pittsburgh District to Arizona for other reasons. Furthermore, although Wallace acknowledged that Correll's conduct, as described by the manager that replaced him, warranted disciplinary action, her focus at that time was to ensure that the markdowns of the store which she was now supervising, and for which Correll no longer worked, were properly recorded. SMF ¶ 67. When his conduct was reported to Wallace, Correll was under 40 years of age. SMF ¶ 66. He is no longer employed by the Company. SMF ¶ 70.

The Court notes that the first time that Kane, Honacki, or Kuniak became aware of the allegations against Dautovich and Correll of withholding markdowns was through the course of this litigation. SMF ¶ 72. They testified that if they had been told of this information when the accused Store Managers still were employed by Home Depot, each would have called for an investigation. In the event that the investigation indicated that Correll and Dautovich had violated company policy regarding markdowns and/or the accuracy

of company records, Kane, Honacki, and Kuniak would have each recommended termination for those Store Managers, just as they did here.  SMF ¶ 73.

## II.  **Standard of Review**

Pursuant to Fed. R. Civ. P. 56, summary judgment is to be rendered "forthwith" when, after an adequate period for discovery, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial, so long as judgment against that party is appropriate as a matter of law.  Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 327 (1999). In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party.  Int'l Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting Matsushita Elec. Indus. Co. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III.  <u>Discussion</u>

Under the ADEA,[2] it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  For an employer to be liable under the Act, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141 (1993).  In seeking to prove his claims, a plaintiff may either offer direct evidence of discrimination, <u>Anderson v. Consol. Rail Corp.</u>, 297 F.3d 242, 248 (3d Cir. 2002); <u>see</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), or proceed under the indirect method of proof established by the United States Supreme Court in <u>McDonnell Douglas Corp. V. Green</u>, 411 U.S. 792 (1973).

Age discrimination actions that are analyzed under the <u>McDonnell Douglas</u> line of cases are resolved using a three-step process which allocates the burden of production and provides an order for the presentation of proof.  <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 644 n.5 (3d Cir. 1998); <u>see</u> <u>Reeves</u>, 530 U.S. at 142-43.  First, the plaintiff must establish a prima

---

[2]  The same legal standards and analysis apply to claims under both the ADEA and the PHRA.  <u>Glanzman v. Metropolitan Mgm't Corp.</u>, 391 F.3d 506, 509 n.2 (3d Cir. 2004).

facie case of discrimination.  <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993).  To this end, he must show that he (1) is a member of a protected class, i.e., at least forty years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and (4) in the case of a demotion or discharge, was replaced by a sufficiently younger person to create an inference of age discrimination.  <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 897 (3d Cir. 1987).  Next, once the plaintiff has made this showing, the burden shifts to the employer-defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse decision.  <u>Hicks</u>, 509 U.S. at 506-07.  This burden is one of production, not persuasion.  <u>Id</u>. at 509.  Finally, after the employer provides such a reason, the burden shifts back to the plaintiff, who must then establish by a preponderance of the evidence, that the employer's articulated reason was not the actual reason, but rather was pretext for discrimination.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

In this case, the first two steps of the <u>McDonnell Douglas</u> analysis are not at issue, as Thrower has set forth a prima facie case of age discrimination[3] and Home Depot has proffered a

---

[3]  Thrower satisfies each of the four elements of a prima facie case: (1) he was a member of a protected class at the time of his discharge (50 years of age), (2) Home Depot does not contend that he was unqualified to continue as a Store Manager absent conduct relating to markdowns, (3) he was terminated from his employment as a Store Manager, (4) and he was replaced by Sieg, who was 31 years
(continued...)

legitimate, non-discriminatory reason for his termination.   See Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment ("Support"); SMF ¶¶ 2-5, 58-60, 6-60.   Therefore, the Court's analysis will focus on the third step, as it is the focal point of the parties' arguments in support of and in opposition to summary judgment.

For the following reasons, the Court finds that Thrower has failed to establish pretext under either prong of the test set forth in Fuentes.  As noted, Thrower may satisfy the first prong of the Fuentes test, and thereby avoid summary judgment, by offering evidence "from which a factfinder could reasonably ... disbelieve the employer's articulated legitimate reasons." Fuentes, 32 F.3d at 764.  To discredit Home Depot's proffered reason, though, he "cannot simply show that the [company's] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the [Company], not whether the [Company] is wise, shrewd, prudent, or competent."   Id. at 765.   Rather, Thrower must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence.  Id. at 765.   In other words, Thrower must show "not merely that the employer's

---

[3](...continued)
of age at the time of his hiring.  SMF ¶¶ 2-5, 58-60, 6-60.

proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d at 1109.

Thrower's only argument under this prong is that his falsification of company records was not so serious an offense as to warrant his termination, and thus functioned as a mere pretext for age discrimination.  Opposition pp. 12-13.  However, he fails to cite to any evidence of record which suggests anything other than that discharge for his admitted conduct was, in his opinion, not prudent or wise. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir.1999)("[federal courts] are not in the business of adjudging whether employment decisions are prudent or fair. Instead [the] sole concern is whether unlawful discriminatory animus motivate[d] a challenged employment decision."); See also Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir.1995)(citing Billet v CIGNA Corp., 940 F.2d 812, 825 (3d Cir.1991))("the inquiry into pretext centers upon the employer's beliefs and not the employee's own perceptions.")  Nevertheless, this Court has closely examined the evidence pertaining to Home Depot's investigation of Thrower's conduct and the decision-making process that culminated in his discharge.

The investigation leading to Thrower's termination was initiated by Feathers, a Computer Room Associate who was not involved in the decision-making process.  SMF ¶ 28.  Thrower does

14

not allege that Feathers was motivated by age-based animus in reporting his requests that she delete and later re-enter markdowns to meet District-wide goals.  He also does not assert that the investigation that was commenced in response to Feathers' report was tainted by the age-based bias of Honacki, Kuniak, Bizarro or Miller. In fact, neither the initiation of the investigation into Feather's allegations against Thrower nor the final decision to terminate his employment was undertaken unilaterally by Kane or Wallace.  Rather, four management level employees (Honacki, Kuniak, Bizarro and Miller), who collectively worked in positions throughout the Company's hierarchy, had already determined that termination was appropriate in this case before the issue was presented to Kane and Wallace.  SMF ¶¶ 28-60.

However, instead of making a blanket charge of age discrimination against all of the decision-makers who recommended his termination, Thrower merely contends that the decisions of Kane and Wallace regarding his termination were driven by discrimination. SMF ¶¶ 61-78.  Thus, given the narrow charges of discrimination advanced by Thrower, the credibility of Home Depot's reason for his discharge is not undermined, but is, instead, considerably strengthened by the number and diversity of persons recommending termination without a single voice in dissent.

Therefore, Thrower has pointed to no evidence suggesting that the thoroughly considered decision to terminate his employment

15

was so plainly inconsistent with company practices and policies that his misconduct relating to markdowns could not have been the real reason for his discharge.  <u>Fuentes</u>, 32 F.3d at 765.  As a result, this Court concludes that there is no evidence from which a factfinder could reasonably disbelieve Home Depot's proffered legitimate reason for Thrower's termination.  <u>Id</u>. at 764.

Due to the fact that Thrower has failed to produce sufficient evidence to defeat Home Depot's motion for summary judgment under the first prong of the <u>Fuentes</u> test, it is necessary to proceed to the second prong.  Under this prong, Thrower must identify evidence that "allows [a reasonable] factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." <u>Fuentes</u>, 32 F.3d at 762.  Such evidence must "[prove] discrimination in the same way that critical facts are generally proved — based solely on the natural probative force of the evidence." <u>Keller</u>, 130 F.3d at 1111. For example, an inference of pretext can be demonstrated under the second prong of <u>Fuentes</u> by showing that Home Depot treated other, similarly situated persons not within Thrower's class, more favorably, or that the Company discriminated against other members of his protected class.  <u>Fuentes</u>, 32 F.3d at 765.

Here, Thrower contends that Home Depot failed to terminate two similarly situated Store Managers who had engaged in essentially

the same conduct for which he was discharged.  Opposition pp. 12-13. However, the evidence of record does not support this argument.

Thrower was not the first Store Manager employed by Home Depot to be discharged for falsifying company documents relating to markdowns.  In fact, two others, Tambakis and Klein, both of whom were under 40 years of age at the times of their discharges, were terminated for conduct in violation of company practice and policy. Tambakis falsely recorded merchandise as having been marked down and used the products as a substitute for cash to cover the cost of a damaged Home Depot vehicle.  SMF ¶ 63.  Klein, on several occasions, circumvented company procedures for the purpose of manipulating markdowns to generate petty cash for miscellaneous expenses in the store where he worked.  SMF ¶ 64. While one may argue that Tambakis and Klein's conduct is more serious than that of Thrower, such a view does not compel a finding that Thrower's discharge was unwarranted.

The fact of the matter is, falsifying reports is a violation of Home Depot's Code of Conduct and Ethics Code which may warrant discharge.  SMF ¶¶ 8-9.  The unanimity of the decision-makers in agreeing that Thrower should be terminated indicates a consensus among them regarding the serious nature of his conduct. In this vein, Tambakis and Klein's discharges stand for the general proposition that a Store Manager's falsification of company reports relating to markdowns is grounds for termination, regardless of his

age.  Therefore, Home Depot's responses to these Store Managers' conduct further supports the Company's explanation for its termination of Thrower's employment.

The Court notes that there are two former Store Managers in the Pittsburgh District, Dautovich and Correll, who were not discharged by Home Depot despite the fact that they withheld markdowns and entered the data incrementally or withheld markdowns entirely.  SMF ¶ 66-73.  On its face, the treatment received by these Store Managers for conduct similar to that of Thrower could be interpreted as suggesting that the Company, at least as managed in the Pittsburgh District, does not always terminate Store Managers for falsifying records.  However, upon closer inspection, it is obvious to the Court that Home Depot's responses in those cases were merely the product of the different circumstances surrounding the individual cases and not age-based animus.  See e.g., <u>Davis v. City of Philadelphia Water Dep't</u>, No. 01-4320, 2003 WL 236246, at *1 (3d Cir. Jan. 30, 2003) (accepting as fundamental the premise that "[w]here evidence of allegedly disparate treatment meted out to similarly situated employees ... is relied upon, those individuals must have engaged in the same conduct without such differentiating circumstances that would distinguish ... their employer's treatment of them") (internal quotations omitted); <u>Perkins v. Brigham & Women's Hosp.</u>, ("[A] proponent of [comparative] evidence [of disparate treatment] must show that the individuals with whom he

seeks to be compared have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it") (internal quotations and citations ommitted).

Specifically, with respect to Dautovich, it is true that Spooner, the then Pittsburgh District Manager, did not initiate an investigation of or take disciplinary action against Dautovich upon receiving a report that Dautovich had manipulated company records relating to markdowns.  SMF ¶ 71.  His response to the report is consistent with Thrower's testimony that Spooner had encouraged Dautovich when he was a Store Manager to spread markdowns over several months to meet Company goals.  SMF ¶ 74.  However, Spooner was responsible for implementing company practices and policies, not making them.  While he personally may have decided to ignore the company's practices and policies as they relate to falsifying company records, his approach to such misconduct does not necessarily reflect that of other management level employees.  In fact, Honacki, Kuniak, and Kane each believe that allegations that a Store Manager has violated company practices and policies relating to markdowns and/or the accuracy of company records warrant an investigation and, if substantiated, dismissal.  SMF ¶ 73.  Accordingly, Spooner's response does not indicate that, in general, misconduct similar to that of Thrower may go unpunished at the discretion of a District Manager.  Rather, it merely shows that one

19

District Manager failed to adhere to Home Depot's practices and policies as clearly stated in the Company's Code of Conduct and Ethics Code.  SMF ¶¶ 8-11.  Thus, because Spooner was not involved in the decision to terminate Thrower and his personal approach is not followed by other company managers, his decision not to discipline Dautovich has no bearing upon this case, which accuses only Kane and Wallace of age discrimination.[4]

Upon learning of Correll's alleged misconduct relating to markdowns, Wallace, who was not Correl's supervisor at the time of the commission or discovery of his misconduct, did not initiate an investigation of or take disciplinary action against him despite the fact that he remained a Home Depot employee at that time.  Instead, she focused upon ensuring accurate record-keeping by making certain that all previously withheld markdowns were entered into the Company's system immediately.  SMF ¶ 68.  In retrospect, Wallace acknowledged that Correll's conduct warranted disciplinary action.  SMF ¶ 69.

It is clear, however, that Correll and Thrower were not similarly situated at the time of their discharges.  At the time

_____

[4]  Even if Wallace had been the Pittsburgh District Manager when Dautovich's conduct was reported and she decided, as did Spooner, not to discipline him, Dautovich's experience would not support Thrower's claims of age discrimination because Dautovich was over 40 years of age when his alleged misconduct was reported.  SMF ¶ 66.  Thus, any suggestion that Dautovich and Thrower received disparate treatment because Wallace discriminated on the basis of age would be illogical.  See Fuentes, 32 F.3d at 765.

that his conduct was reported to Wallace, Correll, who was under 40 years of age, had already self-demoted out of the Pittsburgh District to Arizona for other reasons. SMF ¶ 66-69. The Pittsburgh District Manager possessed supervisory authority over both Correll and Thrower during their tenures as Store Managers in that District. However, Correll's misconduct was not brought to Wallace's attention until after he had self-demoted to a position in Arizona. Thus, unlike Thrower when his misconduct was first reported, Correll was not under Wallace's supervisory authority at that time. SMF ¶ 68. In addition, here, Wallace merely agreed with several management level company employees' recommendations that Thrower should be discharged for his misconduct. SMF ¶ 54. She neither initiated nor participated in the investigation of Thrower's conduct. SMF ¶ 28-49. Conversely, with respect to Correll, Wallace would have had to of initiated an investigation herself because she alone received a report of his conduct. SMF ¶ 67. She never had the opportunity to recommend or not to recommend Correll's termination because no investigation of him was ever commenced. SMF ¶ 68. Accordingly, because Wallace's responses to Thrower and Correll's similar conduct each occurred within the context of circumstances materially different from those influencing the other, no logical inference of age discrimination can be drawn from their disparate treatment.

Moreover, the mere favorable treatment of one younger manager as compared to one older manager may not be sufficient to

infer age discrimination because such a comparison does not establish a pattern of discrimination.  See Simpson, 142 F.3d at 645-47.  Thus, even if Thrower had been able to identify one similarly situated Store Manager under the age of 40 who was treated more favorably, this would not necessarily have led to an inference of age discrimination.  In fact, it is likely that such an inference would not be made considering that Thrower was treated in the same manner as Store Managers Tambakis and Klein, both of whom were under 40 years of age at the time of their discharge.

In addition to his claims relating to the disparate treatment of allegedly similarly situated Store Managers, Thrower argues that statements made by Kane and Wallace are further evidence of pretext.  Opposition p. 11-12.  Specifically, Thrower points to various statements made by Kane beginning almost a year prior to Thrower's termination, which referred to the level of energy, or "fire," that he exhibited in his managerial role.  SMF ¶¶ 77, 78. However, the Court finds that these statement were age neutral and merely constituted stray remarks which are insufficient to support an inference of discrimination as they lack any substantive or temporal connection to the decision-making process at issue.  See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1112 (3d Cir. 1997) (en banc) (evidence that decision-maker had, outside of the decision-making process, suggested that employee might be getting too old was insufficient to constitute evidence of age-based

animus); <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks ... by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.") (citation omitted).   The fact of the matter is that, while the energy or fire exhibited by a person serving in a managerial role may be impacted by age, it may just as easily be the product of the amount of effort exerted or personality traits.   Thus, this Court does not find that this constitutes significant evidence of pretext. <u>Keller</u>, 130 F.3d at 1112.

More significantly, Thrower relies upon Wallace's statement to him that, compared to other store managers, he was slower and older in order to show the existence of pretext.   SMF ¶ 75.   However, "while such words certainly may constitute evidence from which a reasonable factfinder could draw an inference of age-based animus," "those words alone could not reasonably be viewed as sufficient to prove by a preponderance of the evidence that age was a determinative cause of Thrower's subsequent termination." <u>Keller</u>, 130 F.3d at 1112.

Instead, this statement, made by Wallace during a counseling session with Thrower, which was held to discuss his job performance and leadership abilities in order to better ensure future success of the Company, did not indicate or otherwise imply that Thrower's age or energy level might lead to his termination

and, thus, is most aptly viewed, within the context of the record as a whole, as a further expression of Kane's age neutral suggestion that Thrower exude more energy in the exercise of his managerial duties.  Furthermore, the Court notes that this statement was not related to nor made in response to the misconduct which ultimately led to Thrower's termination, and there is no evidence that any of the five other decision makers in this case, most importantly those who initiated the investigation, had any knowledge that such comments had been made by Wallace or that they themselves had made any such similar comments.

Accordingly, for all of the reasons stated above, the Court finds that Thrower cannot defeat Home Depot's motion for summary judgment under McDonnell Douglas.

The Court will now address Thrower's argument that those statements made by Kane and Wallace constitute direct evidence of age discrimination.  Evidence will not be considered to be "direct" unless it "leads not only to a ready, logical inference of bias, but also to a rational presumption that the person expressing bias acted on it." Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097 (3rd Cir. 1995).  For the same reasons the Court has already found that neither Kane's nor Wallace's statement were sufficient to establish, by a preponderance of the evidence, that discrimination was more likely than not a motivating or determinative cause of Thrower's termination, it finds that such statements cannot amount

24

to direct evidence, <u>Starceski</u>, 54 F.3d at 1097, and, thus, Thrower cannot survive Home Depot's Motion for Summary Judgment under <u>Price Waterhouse</u>.

### IV.  <u>Conclusion</u>

For the reasons set forth above, Home Depot's Motion for Summary Judgment on Thrower's age discrimination claims under the ADEA and the PHRA is granted.

An appropriate Order will be issued.


                                        S/Alan N. Bloch
                                        United States District Judge

Dated: September 27, 2005

cc/ecf:   Melvin L. Vatz, Esquire
          Joel S. Sansone, Esquire
          Christopher K. Ramsey, Esquire
          Larry L. Turner, Esquire